## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL WARD,

    Plaintiff,

      v.

MICHAEL BROWN, JOHN TEDESCO,
YAN YU, and NEWWORLD OMEKE,

    Defendants.

No. 18-cv-01798

Judge John F. Kness

## MEMORANDUM OPINION & ORDER

After Plaintiff Michael Ward fought another inmate at the Cook County Department of Corrections, Plaintiff sued four of the facility's employees: two correctional officers, Michael Brown and John Tedesco, and two medical professionals who treated the injuries Plaintiff received during the fight, Nurse Newworld Omeke and Dr. Yan Yu. Plaintiff alleges that Brown, acting under the color of state law, ordered the other inmate to fight Plaintiff after Plaintiff declined Brown's order to give a message to that inmate. Plaintiff brings negligence, failure to intervene, and failure to protect claims against both Brown and Tedesco based on Brown's purported order. Plaintiff also brings claims against both Brown and Tedesco for their alleged failure to quickly intervene to protect Plaintiff from the other inmate. Plaintiff claims Omeke was deliberately indifferent toward his treatment after the fight and that Omeke and Yu were both deliberately indifferent in treating him several weeks later.

Presently before the Court are Defendants Brown and Tedesco's motion for summary judgment (Dkt. 106), as well as Defendants Omeke and Yu's separate motion for summary judgment (Dkt. 109). For the reasons that follow, Defendants Brown and Tedesco's motion is granted in part and denied in part, and Defendants Omeke and Yu's motion is granted in full. Because Plaintiff fails to offer any evidence supporting a finding that Tedesco's response to the fight was objectively unreasonable, summary judgment in Tedesco's favor is warranted. But because of genuine factual disputes as to whether Brown directed the other inmate to fight Plaintiff, summary judgment cannot be entered in Brown's favor. Nor is Brown entitled to qualified immunity.

Summary judgment is warranted as to Plaintiff's deliberate indifference claims against both Omeke and Yu. Plaintiff fails to offer evidence that the care he received was objectively unreasonable, and he supplies no "verifying medical evidence" that the delayed treatment he received from Omeke and Yu caused the harm giving rise to the present suit. *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007). Accordingly, the Court grants summary judgment in favor of Omeke and Yu.

## I.    BACKGROUND

This case arises out of an injury—a broken or dislocated thumb—Plaintiff Michael Ward[1] sustained during a fight he had with another inmate, Jonathon

---

[1] Although Plaintiff's name appears as "Michael Ward" on the case docket and in most of the case filings (including those by Plaintiff), Plaintiff testified in his deposition that his first name is actually "Micheail." (*See, e.g.*, Dkt. 112-11 at 3 (Plaintiff's Deposition) ("[M]y name is Micheail Ward. M-i-c-h-e-a-i-l, W-a-r-d.").) The latter spelling is confirmed in the Illinois Department of Corrections Internet Inmate Status filed with Defendants' motions. (*See* Dkt. 112-1 at 1 ("Ward, Micheail").)

Ferguson, on September 4, 2017 at the CCDOC in Chicago, Illinois.[2] At that time, Defendants Michael Brown and John Tedesco were correctional officers at CCDOC. (Dkt. 122 ¶¶ 3–4.) Plaintiff, then a pretrial detainee at CCDOC, does not dispute that the fight occurred. (*See, e.g., id.* ¶ 52.) Nor does Plaintiff dispute that he threw the first punch. (*Id.* ¶ 53.) Indeed, Defendants supply footage of the video taken on the prison's recording system that confirms those facts. (Dkt. 119 (under seal).)

What is principally in dispute between Plaintiff and Defendants Brown and Tedesco is the cause of the fight. According to Brown and Tedesco, Plaintiff spit on Ferguson while Ferguson was in his cell. (Dkt. 108 ¶ 23.) Those Defendants contend that Brown then let Ferguson out of his cell so Ferguson could get a scheduled haircut, and Ferguson removed his shirt (*id.* ¶¶ 27, 29–30). Plaintiff testified that, "[a]ny time somebody take[s] their shirt off and go[es] under the stairs and call[s] you under there, you have no choice but to meet that, head for it first." (Dkt. 130 ¶ 14; Dkt. 112-11 at 49.) Shortly thereafter, Plaintiff approached Ferguson under and "threw the first punch." (Dkt. 108 ¶ 53.)

---

[2] It is not clear from the Court's review of the record whether Plaintiff was a pretrial detainee, as opposed to an inmate serving a prison sentence, at the time of the alleged incident. That distinction sometimes matters for understanding the legal standard to be applied. *See, e.g., Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022) (describing the different standards applied in assessing conditions-of-confinement claims). The complaint describes Plaintiff as "a detainee" (Dkt. 11 ¶ 1) and Plaintiff does not dispute Defendants' similar characterization of him (Dkt. 122 ¶ 2). Defendants also describe Plaintiff as a "pretrial detainee" in their briefs. (Dkt. 107 at 5; Dkt. 110 at 8.) Accordingly, where relevant, the Court assumes that Plaintiff was a pretrial detainee at the time of the incident. The Plaintiff's status as a pretrial detainee, rather than as an inmate serving a prison sentence, does not affect the Court's findings and holdings in this opinion.

Plaintiff disputes that account, contending that Brown directed Plaintiff to inform Ferguson that Ferguson would not be allowed out of his cell. (Dkt. 123 ¶ 6.) When Plaintiff refused on the grounds that Plaintiff believed Brown should be the one to inform Ferguson, Brown "got angry, called [Plaintiff] a bitch, used racial slurs against [Plaintiff], and told [Plaintiff] he [Brown] was going to let Ferguson out to beat [Plaintiff's] ass." (*Id.* ¶ 8.) According to Plaintiff, Brown "ordered Ferguson to beat up Ward." (*Id.* ¶ 10.) When Brown let Ferguson out of his cell and Ferguson removed his shirt, there was "no way around [fighting]" and Plaintiff "had to go under the stairs and fight" Ferguson to protect himself from grievous bodily harm. (*Id.* ¶¶ 11−14.) After Ferguson indicated his preparedness to fight, Plaintiff "felt like [he] had no choice" and as though his "life was in danger." (Dkt. 112-11 at 50.)

The parties agree that Brown and Tedesco were not physically present when the fight began. Rather, the officers were in an adjacent room known as "the officer's 'bubble,'" separated by a window from the room where the fight occurred. (Dkt. 122 ¶¶ 10, 46.) After the fight began, another inmate alerted Brown and Tedesco by waving to them through the window. (*Id.* ¶ 58.) So alerted, and only 14 seconds after the fight began, Brown and Tedesco entered the room where the fight was taking place, and Brown called for backup. (*Id.* ¶ 59.) A few moments later, Brown and Tedesco retreated to the bubble and waited for reinforcements. (Dkt. 122 ¶¶ 62−63.) By the time Brown, Tedesco, and the additional officers re-entered the room and separate Plaintiff and Ferguson, the fight had lasted approximately two minutes. (*Id.* ¶ 64.)

4

During the fight—in fact, within just the first few seconds of the altercation—Plaintiff injured his thumb. (Dkt. 122 ¶ 54.)[3] After he was separated from Ferguson and taken into custody, Plaintiff sought medical treatment for his injury. (Dkt. 132 ¶ 1.) Plaintiff and Defendants Yan Yu and Newworld Omeke dispute who initially treated Plaintiff (*see id.* ¶¶ 1–3), but the dispute is immaterial. Regardless of who initially assessed his injury, Plaintiff was eventually diagnosed with a dislocated thumb and was fitted with a cast. (Dkt. 132 ¶ 3.)

A few weeks later, in the late evening of September 24, 2017, Plaintiff met with Omeke again—this time in response to a Health Service Request Form Plaintiff submitted relating to pain in his hand. (Dkt. 125 ¶ 22.) Omeke contacted the emergency room, and Dr. Yu saw Plaintiff early the next morning. (*Id.* ¶¶ 23–24.) After evaluating Plaintiff's condition, Yu "cleared Plaintiff to go back to his cell." (*Id.* ¶¶ 25–28.)

Much of Plaintiff's subsequent medical history involves interactions with other medical professionals and is unrelated to this suit. Plaintiff's primary, relevant contention is that, because of the indifference shown to Plaintiff's injuries on September 4 and September 24/25, Plaintiff had to undergo two surgeries. (*See* Dkt. 125 ¶¶ 32, 42.)

On March 12, 2018, Plaintiff sued (Dkt. 1) based on that alleged deliberate indifference and related "severe physical injuries, pain, and suffering" Plaintiff

---

[3] The parties characterize Plaintiff's injury slightly differently, sometimes describing his thumb as "broke[n]" (*e.g.*, Dkt. 110 at 7) and other times as "dislocated" (*e.g.*, Dkt. 124 at 2).

allegedly suffered "as a result of the attack by Ferguson" (Dkt. 11 ¶ 15). Now before the Court are motions for summary judgment filed separately by Defendants Brown and Tedesco (Dkt. 106) and Defendants Omeke and Yu (Dkt. 109).

## II.  STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable to Plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III.   DISCUSSION

In their motions for summary judgment, Defendants argue that Plaintiff failed to exhaust the administrative remedies available to him and, in the alternative, that Plaintiff cannot establish the claims he raises in his suit. Brown and Tedesco separately claim that they are entitled to qualified immunity. This opinion addresses Defendants' exhaustion arguments (Part III.A) before turning to the merits of Plaintiff's federal and state-law claims against Brown and Tedesco (Parts III.B, III.C) and Plaintiff's federal claims against Omeke and Yu (Part III.D)—drawing all inferences as to disputed facts in Plaintiff's favor. Because the determination of whether Brown and Tedesco are entitled to qualified immunity turns on factual determinations related to Plaintiff's substantive claims, the Court will address the availability of qualified immunity in its assessment of the federal claims against those Defendants (Part III.B).

### A.   Exhaustion

Both sets of Defendants argue that Plaintiff failed to exhaust the administrative remedies available to him. (Dkt. 107 at 11−13; Dkt. 110 at 5−8.) Under the Prison Litigation Reform Act, inmates must exhaust the administrative remedies available to them before pursuing claims in federal court. 42 U.S.C. § 1997e(a). To satisfy the exhaustion requirement, prisoners "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

A prisoner need not name each individual who may later be sued for the content of the grievance, but the prisoner must file a grievance outlining his complaints. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Prisoners also do not need to "file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing. . . . Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand specific relief; all the grievant needs to do is "object intelligibly to some asserted shortcoming." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

### 1.   *Brown and Tedesco*

Plaintiff adequately exhausted the administrative remedies available to him against Brown and Tedesco. On September 5, 2017 (the day after the fight), Plaintiff filed a grievance against "CCDOC Staff" and "Brown." (Dkt. 122 ¶¶ 66–69.) Although some of the words in Plaintiff's grievance are difficult to discern, Plaintiff complained that "Brown . . . told [him] he was gone [sic] let Ferguson out to beat [Plaintiff's] ass." (Dkt. 112-6 at 1.) Plaintiff also explained that, when Plaintiff "put [his] hand up to protect [himself]" during the fight, he "broke [his] thumb." (*Id.*) After Plaintiff's grievance was forwarded to the Office of Professional Review, Plaintiff appealed, claiming that was not what he wanted. (Dkt. 122 ¶¶ 68–69; Dkt. 112-6 at 5.) Rather, as he explained in writing, Plaintiff wanted to "talk to someone face to face" and to "press charges." (Dkt. 122 ¶ 69; Dkt. 112-6 at 5.)

Taken together, Plaintiff's initial complaint and his subsequent appeal are enough to satisfy the exhaustion requirement. Plaintiff named Brown in his complaint and specifically described the allegedly wrongful behavior by Brown that gave rise to the complaint. Although Plaintiff did not specifically name Tedesco, given that Tedesco was on duty and assisting Brown during the incident (Dkt. 122 ¶ 9), Plaintiff's naming of "CCDOC Staff" (Dkt. 112-6 at 1) was enough to apprise the prison that Plaintiff was also complaining about Tedesco's conduct. *See Jones*, 549 U.S. at 218.

### 2. *Yu and Omeke*

Plaintiff also adequately exhausted the administrative remedies available to him as to Defendants Omeke and Yu. On September 18, 2017, Plaintiff filed a grievance against Omeke and the "Medical Staff" based on his treatment on September 4. (Dkt. 125 ¶ 68; Dkt. 112-8 at 35.) Plaintiff complained that, after he was taken to "medical," he "was treated by Nurse Omeke," who looked at Plaintiff's thumb and "told [him it] was fine [and] gave [him] pain medication." (Dkt. 112-8 at 35.) As Plaintiff later learned when he was sent to the hospital, however, his "thumb was broken." (*Id.*)

After Plaintiff met with Yu on September 25, Plaintiff filed a grievance against Yu. (Dkt. 125 ¶ 69; Dkt. 112-8 at 33.) (Unsure about the spelling of Yu's name, Plaintiff identifies Defendant as "Dr. U / or Dr. You." Dkt. 112-8 at 33.) Plaintiff complains that, while he was explaining what happened to him, Yu "cut [him] off" and asked the correctional officer present whether Plaintiff was "telling the truth."

(*Id.*) According to Plaintiff, Yu did not believe Plaintiff's account, called Plaintiff "a bitch," told Plaintiff "to get out," and ultimately "refused [Plaintiff] medical attention." (*Id.*)

Plaintiff's collective complaints against Omeke and Yu are enough to satisfy the exhaustion requirement as to the relevant interactions between Plaintiff and those Defendants giving rise to the present claim. Having found that Plaintiff adequately exhausted the administrative remedies available to him, the Court next turns to the substance of the claims against the two sets of Defendants.

### B.    Federal Claims Against Defendants Brown and Tedesco

Plaintiff brings federal failure to protect (Counts III and IV) and failure to intervene (Counts V and VI) claims against Defendants Brown and Tedesco. (Dkt. 11 ¶¶ 40−69.) In essence, Plaintiff claims that, because of Brown and Tedesco's failures to intervene and to protect him, Plaintiff suffered "grievous bodily harm." (*Id.*)

Prison officials "have a duty to protect inmates from violent assaults by other inmates." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 669 (7th Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 831−33 (1994), *abrogation on other grounds recognized in Kemp v. Fulton Cnty*, 27 F.4th 491, 494 (7th Cir. 2022). Put another way, "[i]ncarcerated people" such as Plaintiff "have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp*, 27 F.4th at 494.

As a pretrial detainee, Plaintiff's claims are governed by an objective standard. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). Plaintiff thus needs to show that Brown and Tedesco's conduct was "objectively unreasonable." *Kemp*, 27 F.4th at

495 (quoting *Hardeman*, 933 F.3d at 824). That analysis depends on the facts and circumstances of the case. *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).

> 1. *Tedesco*

Summary judgment is appropriate as to the claims against Tedesco because Plaintiff offers no evidence that Tedesco's conduct was objectively unreasonable. In fact, Plaintiff provides very little evidence at all relating to Tedesco's conduct and involvement. Plaintiff admitted at his deposition that he did not "talk to Tedesco at all" before the fight. (Dkt. 112-11 at 18.) Plaintiff's claims against Tedesco seem instead to be based on Tedesco's presence in proximity to the fight and Tedesco's ostensible delay in responding. But, as Plaintiff admits, Tedesco waited only 14 seconds before initially entering the room where the fight was taking place. (Dkt. 122 ¶ 59.) Tedesco then exited the room to wait for reinforcements, as confirmed by the video of the fight. (*Id.* ¶¶ 62–64; Dkt. 119 (under seal)); *see Scott*, 550 U.S. at 379 (endorsing consideration of video footage at summary judgment).

Those facts cannot support finding that Tedesco was "objectively unreasonable" in his response to the fight. In a similar case in which one inmate attacked another, another judge in this District explained that "[t]he Constitution does not require correctional officers to have cat-like reflexes." *Young v. Dart*, 2021 WL 3633927, at *6 (N.D. Ill. Aug. 17, 2021). As in *Young*, "it is difficult to imagine" how Tedesco "could have intervened more quickly" to protect Plaintiff. *Id.* In the absence of evidence sufficient to create a genuine dispute as to the reasonableness of

Tedesco's conduct, there is no basis for allowing Plaintiff's claims to proceed. Accordingly, summary judgment is granted to Tedesco as to Plaintiff's federal claims.

       2.     *Brown*

       a.     The merits of Plaintiff's federal claims against Brown

Plaintiff's claims against Brown rest on a different footing. According to Plaintiff, Brown "ordered Ferguson to beat up Ward." (Dkt. 123 ¶ 10.) The parties also supplied video footage from after the fight (the interpretation of which is disputed) of Ferguson exclaiming that Brown was at "fault" for the fight and blaming Brown (and another officer) for initiating the hostile situation. (*See* Dkt. 130 ¶¶ 16–17.)

Drawing reasonable inferences in Plaintiff's favor, a "reasonable jury" could find that Brown instigated the fight and thus that Brown is liable to Plaintiff. *Gorbett*, 863 F.3d at 745. If it is true that Brown directed Ferguson to fight Plaintiff, Brown violated Plaintiff's "right to be free from physical harm inflicted by others in the institution." *Kemp*, 27 F.4th at 494. Because there remain genuine disputes of material fact as to Brown's conduct giving rise to the present suit, summary judgment is inappropriate.

This finding is not affected by the fact—as admitted by Plaintiff in his deposition, and as confirmed in the video recording of the fight—that Plaintiff threw the first punch. (Dkt. 112-11 at 16; Dkt. 119 (under seal).) According to Plaintiff, "unwritten rules" mandated that once Ferguson removed his shirt, there was "no way around" fighting him, and Plaintiff "had to go under the stairs and fight" to protect

himself. (Dkt. 130 ¶ 14; Dkt. 112-11 at 16.) Plaintiff testified during his deposition that "[a]ny time somebody take[s] their shirt off and go[es] under the stairs and call[s] you under there, you have no choice but to meet that, head for it first." (Dkt. 130 ¶ 14; Dkt. 112-11 at 49.) After Ferguson indicated his preparedness to fight, Plaintiff thus "felt like [he] had no choice" and as though his "life was in danger." (*Id.*) It is possible—but certainly not required—that a reasonable jury could agree that Plaintiff was justified in throwing the first punch; such factual disputes preclude entry of summary judgment as to the claims against Brown.

### b.    Qualified immunity

For similar reasons, Brown is not entitled to qualified immunity. Qualified immunity shields public officers such as Brown from liability when the conduct of those officers "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citing *Kisela v. Hughes*, 138 S. Ct. 1148 (2018)). Whether Brown is entitled to qualified immunity turns on "first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted); *see Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir.

2018). "If *either* inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (cleaned up).

As to the first part of the qualified immunity analysis, prisoners in Plaintiff's position have a Fourteenth Amendment right "to be free from physical harm inflicted by others in the institution." *Kemp*, 27 F.4th at 494. That right is violated when, for example, a corrections officer instigates a fight between two inmates. *See Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002). In *Peate*, the Seventh Circuit held that the district court improperly granted summary judgment to a corrections officer who equipped one inmate with a laundry bag weapon and then "stood by" while that inmate beat the plaintiff with it. *Id.* Summary judgment was inappropriate because the officer's actions could, at a minimum, "demonstrate [an unconstitutional] disregard for [the plaintiff's] safety." *Id.*

Taking the facts in the light most favorable to Plaintiff, Brown's conduct— directing Ferguson to fight Plaintiff—likewise violated Plaintiff's right. As in *Peate*, Plaintiff argues that Brown instigated the fight when Brown let Ferguson out of his cell, ordered him to fight Plaintiff, and stood by as Ferguson and Plaintiff fought. If that argument—which Plaintiff supports with "competent evidence," *id.*—is accepted by a jury, it would establish that Brown violated Plaintiff's Fourteenth Amendment right.

Defendants cite *Lemmons v. Durant* in arguing that "Plaintiff does not have a right to be protected from a fight he started." (Dkt. 107 at 13−14 (citing 2011 WL 4633104 (C.D. Ill. Oct. 4, 2011).) According to Defendants, even if Brown "told

Ferguson to fight Plaintiff" (which Brown disputes), that fact "is not material because the objective video evidence shows that Plaintiff walked over to Ferguson and struck first." (*Id.* at 14.) But the plaintiff in *Lemmons* "did not inform any staff prior to the fight [giving rise to the failure-to-protect claim] that [the plaintiff] had any problems with [the other inmate]." 2011 WL 4633104, at *2. In the present case, by contrast, Plaintiff argues (with support from admissible evidence) not only that Brown was aware of problems with Ferguson, but also that Brown instigated the fight by letting Ferguson out of his cell and ordering Ferguson to fight Plaintiff. That fact is material, and the parties' dispute over its accuracy prevents the finding that Brown is entitled to summary judgment.

As to the second part of the qualified immunity analysis, the right Brown is accused of violating was clearly established long before the September 2017 fight that gave rise to this case. The Supreme Court held in 1994 that prison officials could be liable for "fail[ing] to act despite [their] knowledge of a substantial risk of serious harm" to a prisoner. *Farmer*, 511 U.S. at 842. As the Seventh Circuit has repeatedly recognized since that time, "the Constitution imposes on officials the duty to protect those in their charge from harm from other prisoners." *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001); *see Peate*, 294 F.3d at 883; *Rice ex rel. Rice*, 675 F.3d at 668; *Langston v. Peters*, 100 F.3d 1235 (7th Cir. 1996). Ordering one inmate to fight another (as Plaintiff contends) would run afoul of that well-established duty—and a "reasonable official" in Brown's position would have understood that correctional

15

officers cannot orchestrate a real-world version of "Fight Club"[4] without violating an inmate's rights, *Mullenix*, 577 U.S. at 11; *see Smith v. Finkley*, 10 F.4th 725, 742 (7th Cir. 2021) ("A constitutional right is clearly established if the right in question is sufficiently clear that a reasonable official would understand that what he is doing violates that right." (cleaned up)); *Taylor v. Ways*, 999 F.3d 478, 492 (7th Cir. 2021) ("[W]hile precedent tied to particularized facts can indicate that a point of law is clearly established, the Supreme Court does not demand a case directly on point.").

To be clear, Brown may ultimately persuade a jury that he did not instigate the fight between Plaintiff and Ferguson. If he does, the case may end there under the first part of qualified immunity analysis. *See Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992) ("When the issue of qualified immunity remains unresolved at the time of trial, as was the case here, the district court may properly use special interrogatories to allow the jury to determine disputed issues of fact upon which the court can base its legal determination of qualified immunity."). But, at this juncture, the above-described disputes of material fact about Brown's conduct preclude a finding that he is entitled to qualified immunity. *Mayoral*, 245 F.3d at 938 ("Summary judgment may be granted only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."); *see Weinmann v. McClone*, 787 F.3d 444, 451 (7th Cir. 2015) (affirming denial of summary judgment because the "existence of a factual dispute about the circumstances [giving rise to the allegedly unlawful conduct] preclude[d] a ruling on

---

[4] *See* Fight Club (Fox 2000 Pictures *et al.* 1999).

qualified immunity"); *Strand v. Minchuk*, 910 F.3d 909, 918 (7th Cir. 2018) (similar); *Holmes v. Hernandez*, 2021 WL 4244756, at *8 (N.D. Ill. Sept. 17, 2021) ("[D]isputes of material fact may preclude qualified immunity, when reading the facts in the light most favorable to the plaintiff leads to the conclusion that a reasonable jury could find that the defendant violated a clearly established right.").

### C.   State-law Claims Against Defendants Brown and Tedesco

Plaintiff also brings state-law negligence claims (Counts I and II) against Defendants Brown and Tedesco. (Dkt. 11 ¶¶ 26–39.) Defendants argue that the claims (which were only brought in Plaintiff's amended complaint) are untimely and, in the alternative, that they are immune from suit because "Plaintiff caused this thumb injury by walking over to Ferguson and throwing the first punch." (Dkt. 107 at 15.)

First, Plaintiff's state-law claims are subject to a one-year statute of limitations. *See* 745 ILCS 10/8-101(a). The fight giving rise to this suit occurred on September 4, 2017, and Plaintiff's suit was submitted on March 12, 2018. (Dkt. 1.) But Plaintiff did not clearly include his state-law negligence claims until he amended his complaint on October 24, 2018—more than one year after the fight. (Dkt. 11.) Whether Plaintiff's negligence claims were timely filed thus turns on whether those claims relate back to the filing date of his original complaint.

Under Rule 15 of the Federal Rules of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P.

15(c)(1)(A); *see Henderson v. Bolanda*, 253 F.3d 928, 933 (7th Cir. 2001). Illinois law, which governs Plaintiff's negligence claims, allows for relation back when "(1) the original complaint was timely filed, and (2) the amended complaint grew out of the same transaction or occurrence set forth in the original pleading." *Henderson*, 253 F.3d at 933. Put another way, Plaintiff's state-law claims relate back if they amount to "a new legal theory" added "to a set of previously alleged facts." *Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 592 (Ill. 2008) (citation omitted). Because Plaintiff's complaint was timely filed, and because his negligence claims clearly grew out of the same occurrence that gave rise to his federal claims, those claims relate back and are not barred by the statute of limitations.

Second, Plaintiff's state-law claims are also subject to the Illinois Tort Immunity Act (TIA), under which "a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. Because the evidence supports, at most, a finding that only Brown acted unlawfully (*see supra*), the TIA justifies summary judgment as to the state-law negligence claim against Tedesco. But the Court cannot find that Plaintiff alone caused his injuries, as Defendants suggest. (Dkt. 107 at 15.) Drawing reasonable inferences as to disputed facts in Plaintiff's favor, Brown contributed to Plaintiff's injury, and a reasonable jury could find that Brown was negligent. The TIA thus does not shield Brown from liability under state law for his own disputedly-unlawful actions.

\*      \*      \*

Accordingly, Defendants Brown and Tedesco's motion for summary judgment (Dkt. 106) is granted in part and denied in part. Summary judgment is granted as to all claims against Tedesco and is denied as to all claims against Brown.

### D.    Claims Against Defendants Yu and Omeke

Plaintiff brought claims for deliberate indifference against Defendants Yu and Omeke based on those Defendants' alleged refusals to provide adequate treatment for Plaintiff's broken bone and torn ligament. (Dkt. 11 ¶¶ 70−83.)

To succeed in his deliberate indifference claim, as in his federal claims against Defendants Brown and Tedesco, Plaintiff must meet an objective standard. *Kemp*, 27 F.4th at 495. To meet that standard, Plaintiff must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when an inmate demonstrates that he was deprived of treatment for a "sufficiently serious" medical condition. *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir. 1997). The medical condition need not be life-threatening to be serious; rather, "it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010).

Setting aside some of the factual disagreements between the parties—such as whether Omeke was the nurse who initially treated Plaintiff after his fight (Dkt. 132 ¶¶ 1−3)—Plaintiff offers no evidence that his treatment by Omeke or Yu was

objectively unreasonable. At most, Plaintiff demonstrates that he personally disagrees with how Omeke and Yu treated him. But "[m]ere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to support a claim for deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Even construing Plaintiff's statements of additional facts in the light most favorable to him, those facts germane to Omeke and Yu's treatment (*see* Dkt. 132 ¶¶ 1, 4–6) support a finding only that Defendants was not satisfied with his treatment. That is not enough to survive summary judgment.

Moreover, in cases such as this in which prison officials are alleged to have delayed, rather than denied, medical assistance, "courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007). In other words, Plaintiff must offer medical evidence "that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* at 715. "[E]vidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him." *Id.*; *see Laughlin,* 430 F.3d at 929.

Plaintiff does not offer any "verifying medical evidence," such as testimony by a medical expert, *see Williams*, 491 F.3d at 715, that the delay in his treatment allegedly attributable to Omeke and Yu's deliberate indifference caused or exacerbated his injury. Although Plaintiff offers evidence including a quote from a doctor (in Plaintiff's medical records) describing the *nature* of his injury (*see* Dkt. 132

¶ 13), even construing that quote and similar statements in the light most favorable to Plaintiff, that evidence does not supports a finding that the injury resulted from any *delay* in treatment.

Accordingly, even drawing all inferences in Plaintiff's favor, no "reasonable jury could return a verdict for" Plaintiff on his deliberate indifference claims against Defendants Omeke and Yu. *Estate of Simpson*, 863 F.3d at 745 (quoting *Anderson*, 477 U.S. at 248). Summary judgment in favor of Omeke and Yu is therefore warranted.

## IV. CONCLUSION

For the above reasons, Defendants Brown and Tedesco's motion for summary judgment (Dkt. 106) is granted as to Defendant Tedesco and denied as to Defendant Brown. Defendants Omeke and Yu's separate motion for summary judgment (Dkt. 109) is granted.

SO ORDERED in 18-cv-01798.

Date: May 3, 2022

_____
JOHN F. KNESS
United States District Judge